O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

JS-6

### CIVIL MINUTES - GENERAL

| Case No. | CV 08-7703 PSG (Ssx) | Date | March 17, 2009 |
|---|---|---|---|
| Title | Diversified Communications Services, Inc. v. Landmark American Insurance Company | | |

Present: The Honorable Philip S. Gutierrez, United States District Judge

| Wendy K. Hernandez | Not Present | n/a |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

Attorneys Present for Plaintiff(s):  Attorneys Present for Defendant(s):

Not Present  Not Present

**Proceedings:** (In Chambers) Order Granting Defendant's Motion

Pending before this Court are Plaintiff's Motion for Partial Summary Judgment and Defendant's Motion to Dismiss for Failure to State a Claim. The Court finds the matter appropriate for decision without oral argument. Fed. R. Civ. Proc. 78; Local R. 7-15. After considering the moving and opposing papers, the Court GRANTS Defendant's Motion and DENIES Plaintiff's Motion.

I.   BACKGROUND

This action arises from another case, *RB Wilson v. Diversified Commc'ns Servs., Inc.* ("the *Wilson* Action"), which was filed in the Superior Court for the State of California. In that case, RB Wilson ("Wilson") asserted two Unlawful Employment Practices claims under California's Government Code for harassment and discrimination against Diversified Communication Services, Inc. ("Plaintiff"), the plaintiff in the instant action. Specifically, Wilson alleged that during his employment with Plaintiff, a Diversified shop supervisor who went by the name of Juan Gonzales ("Gonzales"), and two other coworkers, Gary and Jonathon, began calling Wilson "nigger" and making other demeaning racial comments to him. Additionally, Wilson alleged that Gonzales, in July 2007, hung a noose in the shop where he and Wilson worked and that despite filing complaints with the human resources department and a Diversified project manager, the noose remained in the shop for months on end.

Around November 9, 2007, Wilson suffered an off-the-job shoulder injury. The injury was so severe that Wilson's doctor issued a note excusing him from work until January 15, 2008.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-7703 PSG (Ssx) | Date | March 17, 2009 |
|---|---|---|---|
| Title | Diversified Communications Services, Inc. v. Landmark American Insurance Company | | |

Because Wilson's condition had not improved by January 16, 2008, the doctor renewed the note, excusing Wilson from work until March 2008. Plaintiff, however, allegedly refused to honor this note and, on January 16, 2008, constructively terminated Wilson.

Two months after he was terminated, Wilson, on March 28, 2008, filed suit against Plaintiff. On or about May 8, 2008, Rocky Stein ("Stein"), Plaintiff's insurance broker, emailed Landmark American Insurance Company ("Defendant") to request the defense of the *Wilson* Action under a Commercial General Liability Policy ("Landmark Policy" or the "Policy") that Defendant had earlier issued to Plaintiff. Under the Landmark Policy, Defendant insured Plaintiff in any "suit" seeking damages because of "personal and advertising injury." "[P]ersonal and advertising injury," as defined in the Policy, means "injury including consequential 'bodily injury' arising out of one or more of the following offenses": "Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services."

On May 14, 2008, Defendant acknowledged receipt of the claim. Eventually, though, Defendant denied Plaintiff a defense on three alternative grounds, only two of which are relevant. The first ground was that allegations of harassment and discrimination were not "personal and advertising injury" and/or "bodily injury," as these terms were defined in the policy. The second ground turned on an "Employment-Related Practices Exclusion," which Defendant claimed barred coverage.

On October 3, 2008, Wilson and Plaintiff settled. Subsequent to that settlement, Plaintiff, on November 21, 2008, filed the instant action against Defendant. In its lawsuit, Plaintiff asserts two claims for breach of contract and a claim for breach of the covenant of good faith and fair dealing. Also, Plaintiff seeks declaratory relief that Defendant owed it a duty to defend and a duty to settle.

On February 3, 2009, Defendant filed a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Then, on February 12, 2009, Plaintiff filed a motion for partial summary judgment. Both motions are presently before the Court.

II.     LEGAL STANDARDS

    A.     Federal Rule of Civil Procedure 12(b)(6)

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-7703 PSG (Ssx) | Date | March 17, 2009 |
|---|---|---|---|
| Title | Diversified Communications Services, Inc. v. Landmark American Insurance Company | | |

  Under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), a party may move to dismiss a claim if the claimant fails to state a claim upon which relief can be granted. In evaluating the sufficiency of a complaint under Rule 12(b)(6), courts must be mindful that the Federal Rules require only that the complaint contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Nevertheless, even though a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007) (internal citations omitted). Rather, the complaint must allege sufficient facts to raise a right to relief above the speculative level. *Id.* (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)). Importantly, though, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007).

  In deciding a 12(b)(6) motion, a court must accept all factual allegations in the complaint as true. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164, 113 S. Ct. 1160, 122 L. Ed. 2d 517 (1993). Also, the Court must construe all reasonable inferences in the light most favorable to the plaintiff. *See Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003).

  B. Federal Rule of Civil Procedure 56(c)

  Federal Rule of Civil Procedure 56(c) establishes that summary judgment is proper only when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). If the moving party satisfies the burden, the party opposing the motion must set forth specific facts showing that there remains a genuine issue for trial. *See id.* at 257.

  A non-moving party who bears the burden of proving at trial an element essential to its case must sufficiently establish a genuine dispute of fact with respect to that element or face

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-7703 PSG (Ssx) | Date | March 17, 2009 |
|---|---|---|---|
| Title | Diversified Communications Services, Inc. v. Landmark American Insurance Company | | |

summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Such an issue of fact is a genuine issue if it reasonably can be resolved in favor of either party. *See Anderson*, 477 U.S. at 250-51. If the moving party seeks summary judgment on a claim or defense for which it bears the burden of proof at trial, the moving party must use affirmative, admissible evidence. Admissible declarations or affidavits must be based on personal knowledge, must set forth facts that would be admissible evidence at trial, and must show that the declarant or affiant is competent to testify as to the facts at issue. *See* Fed. R. Civ. P. 56(e).

III.     DISCUSSION

Defendant moves to dismiss all five of the claims asserted against it on the following three grounds. First, it argues that Plaintiff's First Cause of Action for a declaratory judgment that Defendant had a duty to defend Plaintiff in the *Wilson* Action is moot, as the *Wilson* Action has settled. Second, Defendant contends that the underlying action did not fall within the Landmark Policy's coverage. Third, Defendant argues that it never had a duty to defend Plaintiff in the *Wilson* Action because the Employment Related-Practices Exclusion provided an adequate basis for denying defense and indemnification.

In comparison, Plaintiff moves for partial summary judgment on two of the three aforementioned grounds. First, Plaintiff moves for summary judgment on the issue of whether the underlying action was within the subject matter of the Landmark Policy. It is Plaintiff's position that the *Wilson* Action was within the Policy's subject matter because fact assertions contained in the *Wilson* Complaint potentially covered acts of "slander." Plaintiff also moves for summary judgment on the issue of whether the Employment-Related Practices Exclusion applies. According to Plaintiff, this Exclusion does not apply here because the underlying incidents did not "aris[e] out of any . . . [e]mployment-related practices, policies, acts or omissions."

As should be clear from the description above, when all is said and done, there are two threshold issues which must be addressed. First, were there facts asserted in the *Wilson* Complaint which brought the incidents within the Landmark Policy's coverage? Second,

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-7703 PSG (Ssx) | Date | March 17, 2009 |
|---|---|---|---|
| Title | Diversified Communications Services, Inc. v. Landmark American Insurance Company | | |

assuming so, does the Employment-Related Practices Exclusion apply?[1] The Court addresses each of these issues in turn.[2]

> B.  Whether Facts Were Alleged in the *Wilson* Complaint That Gave Rise to the Potential of Liability under the Landmark Policy

The Court first considers whether facts were alleged in the *Wilson* Complaint that gave rise to the potential of liability under the Landmark Policy. It is axiomatic that an insurer owes a "broad" duty to defend its insureds. *CNA Casualty of California v. Seaboard Sur. Co.,* 176 Cal. App. 3d 598, 605, 222 Cal. Rptr. 276 (1986). Furthermore, an insurer's duty to defend "must be analyzed and determined on the basis of any *potential* liability arising from facts available to [the insurer] from the [underlying complaint] or other sources available to it at the time of the tender of defense." *Id.* (emphasis added); *see also Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 276-77, 54 Cal. Rptr. 104 (1966). However, one must not forget that an insurance company's duty to defend arises from the contractual provisions contained in its policy. *McMillin Scripps N. P'Ship v. Royal Ins. Co.*, 19 Cal. App. 4th 1215, 1220-21, 23 Cal. Rptr. 2d 243 (1993). After all, "the insurer's obligation is not unlimited; the duty to defend is measured by the nature and kind of risks covered by the policy [citations]." *Giddings v. Indus. Indem. Co*., 112 Cal. App. 3d 213, 218, 169 Cal. Rptr. 278 (1980).

The Landmark Policy provides:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured

---

[1] The Court need only address Defendant's mootness argument if Defendant did in fact owe Plaintiff a duty to defend.

[2] In conducting the following analysis, the Court treats Landmark's motion to dismiss as a motion for partial summary judgment. Such conversion is appropriate because to resolve these issues the Court must rely on the extrinsic matter submitted by both parties in support of and in opposition to the motion. *See Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir. 1996) ("A motion to dismiss made under Federal Rule of Civil Procedure 12(b)(6) must be treated as a motion for summary judgment under Federal Rule of Civil Procedure 56 if either party to the motion to dismiss submits materials outside the pleadings in support or opposition to the motion, and if the district court relies on those materials.").

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-7703 PSG (Ssx) | Date | March 17, 2009 |
|---|---|---|---|
| Title | Diversified Communications Services, Inc. v. Landmark American Insurance Company | | |

against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.

*Doll Decl.*, *Ex.* 1, p.5. As defined in the Landmark Policy, "personal and advertising injury" is "bodily injury" arising out of a variety of offenses, including "[o]ral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services." *Id.* at 14. Plaintiff contends that the *Wilson* Action sought damages for "personal and advertising injury" because, despite the fact that Wilson did not assert a claim for slander against Plaintiff, his complaint nonetheless included fact allegations of slander. In support of its argument, Plaintiff points to those factual allegations pertaining to race-based discriminatory comments made by Gonzales, Gary, and Jonathon. Defendant, by contrast, argues that racial and ethnic insults and slurs do not support a claim for slander.

In resolving these conflicting interpretations of the phrase "slander," the Court applies settled rules of insurance policy construction. Like any other contract, the goal of insurance policy interpretation "is to determine and give effect to the mutual intention of the parties." *Safeco Ins. Co. v. Robert S.*, 26 Cal. 4th 758, 763, 110 Cal. Rptr. 2d 844 (2001). In so doing, the Court looks "first to the language of the [insurance policy] in order to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it." *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal. 4th 1, 18, 44 Cal. Rptr. 2d 370 (1995). If the policy provision is unambiguous, i.e., has only one reasonable construction, it must be interpreted according to this plain meaning. *Ray v. Valley Forge Ins. Co.*, 77 Cal. App. 4th 1039, 1044, 92 Cal. Rptr. 2d 473 (1999). If, however, the policy provision is ambiguous, the ambiguous terms "'are resolved in the insureds' favor, consistent with the insureds' reasonable expectations.'" *Safeco Ins. Co.*, 26 Cal. 4th at 761.

In California, slander is a form of defamation, Cal. Civ. Code § 44, consisting of a false and unprivileged oral publication. *See id.* at § 46. The policy provision thus appears unambiguous: slander is a false and unprivileged publication.

Having defined slander, the Court must next determine whether the alleged facts in the *Wilson* Complaint revealed the possibility that the claim may be covered by the Landmark Policy. *Waller*, 11 Cal. 4th at 19. As noted above, the scope of the duty does not depend on the labels given to the causes of action in the underlying complaint. *See Hurley Const. Co. v. State Farm Fire & Cas. Co.*, 10 Cal. App. 4th 533, 538, 12 Cal. Rptr. 2d 629 (1992). Rather, what

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-7703 PSG (Ssx) | Date | March 17, 2009 |
|---|---|---|---|
| Title | Diversified Communications Services, Inc. v. Landmark American Insurance Company | | |

matters is whether the allegations of the complaint reveal a *possibility* that the claim may be covered by the policy. *Id.*

In order to make this determination, it is prudent to clarify the tort of slander. In California, to establish a prima facie case for slander, a plaintiff must demonstrate an oral publication to third persons of specified false matter that has a natural tendency to injure or that causes special damage. *See Smith v. Maldonado,* 72 Cal. App. 4th 637, 645, 85 Cal. Rptr. 2d 397 (1999). Words which fall within the purview of California Civil Code section 46 are deemed to constitute slander per se, with the effect that the utterance of such words is actionable without proof of special damage. *Douglas v. Janis,* 43 Cal. App. 3d 931, 938-99 & n.8, 118 Cal. Rptr. 280 (1974).

Defendant takes the position that the *Wilson* Complaint did not even reveal a possibility that a slander claim existed for three alternative reasons. First, racial epithets are not defamatory statements under defamation law. Second, these racial epithets were never published. And, lastly, even if these statements could be considered slander per quod, there were no allegations of special damages. Each of these arguments is addressed in turn.

An interesting issue arises as to whether a racial epithet, such as "nigger," is a defamatory statement for the purposes of defamation law. Defendant argues that such statements, while demeaning, are not slanderous. And apparently most courts agree with Defendant. *See, e.g., Ledsinger v. Burmeister*, 318 N.W. 2d 558, 563 (Mich. Ct. App. 1982) ("[A]lthough the racial epithet 'nigger' may be offensive, its natural and ordinary import is as a slang term referring to members of the Negro race, a meaning that is not defamatory."); *Bradshaw v. Swagerty*, 563 P.2d 511, 514 (Kan. Ct. App. 1977) ("The term 'nigger' is one of insult, abuse and belittlement . . . . Its use is resented, and rightly so. It nevertheless is not within any category recognized as slanderous per se."). It also appears, however, that the landscape on this particular issue is shifting. For example, in *Nat'l Union Fire Ins. Co. of Pittsburgh, P.A. v. Starplex Corp.*, 188 P.3d 332 (Or. Ct. App. 2008), the Oregon Court of Appeals reversed the trial court's finding in an insurance coverage case that the defendants had no duty to defend because racial epithets were not slanderous statements. The Oregon Court of Appeals reasoned that since racial epithets are false statements that "tend to diminish the esteem, respect, goodwill or confidence" in the subject of the speech, they are defamatory statements. *Id.* at 347; *see also N. Indiana Pub. Serv. Co. v. Dabagia*, 721 N.E. 2d 294, 306-08 (Ind. Ct. App. 1999) (Robb, J., concurring)

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-7703 PSG (Ssx) | Date | March 17, 2009 |
|---|---|---|---|
| Title | Diversified Communications Services, Inc. v. Landmark American Insurance Company | | |

(concluding that the racial slur "camel jockey" is defamatory in and of itself, and thus, constitutes defamation pre quod if the plaintiff can prove special damages).

This Court is persuaded by the reasoning of the Oregon Court of Appeals. The ultimate inquiry in every slander action is whether the statement, word, or phrase was "[a] false and unprivileged oral communication attributing to a person specific . . . unfavorable characteristics or qualities . . . ." *Shively v. Bozanich*, 31 Cal. 4th 1230, 1242, 7 Cal. Rptr. 3d 576 (2003). Now Defendant seems to suggest that the term "nigger" is just a means of identifying others, particularly those within the black community. But such isn't the case. In reaching its decision in *Starplex*, 188 P.3d 332, the Oregon Court of Appeals recognized a truth that has evaded courts in the past and evades Defendant now: racial epithets are not simply a means of identification. No, because they "conjure up the entire history of racial discrimination in this country," Richard Delgado, "A Tort Action for Racial Insults, Epithets, and Name Calling," *in Words that Wound* 100 (Mari J. Matsuda et al. 1993), racial epithets are much more than that. After all, it cannot seriously be argued that calling someone "black" or an "African-American" is the same thing as calling someone a "nigger." This latter description, unlike the former descriptions, carries with it the weight of the collective historical experience of discrimination, complete with intimations of inferiority. *See* Orville Lee, *Legal Weapons for the Weak? Democratizing the Force of Words in an Uncivil Society*, 26 Law. & Soc. Inquiry 847, 859 (2001) ("Racist speech is particularly harmful because it is a mechanism of subordination, reinforcing a historical vertical relationship.") (citation omitted). Put otherwise, since racial epithets often attribute to a person specific unfavorable characteristics, they are not simply a means of identifying others, and thus should not be treated as such. The word at issue here is a perfect case in point. By calling someone a "nigger," the speaker demeans the subject of the speech, lowering the victim's dignity in the eyes of others, all the while subjecting her to contempt and/or ridicule. *Starplex*, 220 Ore. App. At 585; *see also Megarry v. Norton*, 137 Cal. App. 2d 581, 582 (1955) (holding that a sign calling another an "old witch" was libelous because the phrase was used in a derogatory sense, with the intent to expose the plaintiff to contempt and ridicule). To call someone black or African-American does not have this same effect. Accordingly, the Court declines to treat the two as being one and the same, despite Defendant's belief that the Court should do so.

Of course, that the use of the word "nigger" is demeaning and disparaging does not end the inquiry. To be defamatory, the statement must also be false. *See Smith*, 72 Cal. App. 4th at 645. But surely this cannot be an issue in this day and age. As the substance of a racial epithet

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-7703 PSG (Ssx) | Date | March 17, 2009 |
|---|---|---|---|
| Title | Diversified Communications Services, Inc. v. Landmark American Insurance Company | | |

is never true (i.e., that one's race necessarily dictates her abilities and/or status in society), it seems that racial epithets can always be proven to be false. *Dabagia*, 721 N.E.2d at 307.

Having determined that Gonzales, Gary and Jonathon made false and defamatory statements, the Court must now consider whether those statements were published. *Smith*, 72 Cal. App. 4th at 645. As Defendant correctly notes, no claim for slander lies if the defamatory statement was not "published," *i.e.*, communicated to some third person who understands its defamatory meaning and application to the plaintiff. *See Ringler Assocs. v. Maryland Cas. Co.*, 80 Cal. App. 4th 1165, 1179, 96 Cal. Rptr. 2d 136 (2000). "Publication need not be to the public or a large group; communication to a single individual is sufficient." *Id.* (citing *Cunningham v. Simpson*, 1 Cal. 3d 301, 306, 81 Cal. Rptr. 855 (1969)). In this instance, the *Wilson* Complaint alleges that Gonzales, Gary, and Jonathon made comments to Wilson. *Wilson Compl.* ¶ 6. However, the *Wilson* Complaint does not indicate that any other person was in the shop at the time the statements were made. Thus, at first blush, it appears as if the statements were never published.

However, simply because the statements were not directly published by the defamers themselves does not necessarily mean that they were never published at all. In some cases, the originator of a statement may be liable for defamation when the person defamed republishes the statement, provided that the originator "has reason to believe that the person defamed will be under a strong compulsion to disclose the contents of the defamatory statement to a third person *after* he has read it or been informed of its contents. [Citations.]" *Beroiz v. Wahl*, 84 Cal. App. 4th 485, 497, 100 Cal. Rptr. 2d 905 (2000) (emphasis in original); *Live Oak Publ'g Co. v. Cohagan*, 234 Cal. App. 3d 1277, 1285, 286 Cal. Rptr. 198 (1991). In this case, the defamers must have reasonably believed that Wilson might report the comments to someone else. After all, most people would not resign themselves to work in a hostile environment when the disclosure of certain incidents to, for instance, human resources or a supervisor, might very well curb the offensive conduct that was making the environment so hostile. Thus, the Court finds that the originator of the statements had reason to believe that Wilson would have been under a strong compulsion to disclose the contents of the defamatory statements to others. *See McKinley v. Santa Clara*, 110 Cal. App. 3d 787, 168 Cal. Rptr. 89 (1980) (applying this exception in a case where a job seeker had to tell a prospective employer about an allegedly false negative reference in his job file).

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-7703 PSG (Ssx) | Date | March 17, 2009 |
|---|---|---|---|
| Title | Diversified Communications Services, Inc. v. Landmark American Insurance Company | | |

Lastly, the Court considers whether Wilson alleged facts indicating his intention to seek special damages.[3] *Smith*, 72 Cal. App. 4th at 645. Unlike general damages, which include "impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering," *Gertz v. Robert Welch, Inc*., 418 U.S. 323, 350, 94 S. Ct. 2997, 41 L. Ed. 2d 789 (1974), special damages are "the loss of something having economic or pecuniary value." *Restatement* 2d *Torts* § 575, comment b; *see also Simon v. Shearson Lehman Bros.*, 895 F.2d 1304, 1312 (11th Cir. 1990) (discussing California law). As they are specifically defined under California law, "'[s]pecial damages' are all damages which plaintiff alleges and proves that [she] has suffered in respect to [her] property, business, trade, profession or occupation, including such amounts of money as the plaintiff alleges and proves [she] has expended as a result of the alleged libel, and no other." Cal. Civ. Code § 48a.

In the *Wilson* Complaint, Wilson alleges that "[a]s a result of defendants' and each of their actions and omissions, WILSON has suffered loss of wages, loss of benefits, severe emotional distress and other economic and non-economic damages in an amount to be proven at trial . . . ." *Wilson Compl.* ¶ 11. Thus, Defendant's argument that Wilson did not allege facts indicating his intent to seek special damages is simply without merit.

In summary, a review of the *Wilson* Complaint evidences the existence of facts that might give rise to a claim for slander. This finding is bolstered by the recent court opinions that have concluded that racial epithets can be slanderous statements . *See*, *e.g.*, *Starplex*, 188 P.3d 322; *Dabagia*, 721 N.E.2d 294. Accordingly, unless the Employment-Related Practices Exclusion negates any potential for coverage under the Landmark Policy, the Court must find that Defendant breached its duty to defend. *CNA Casualty of California.,* 176 Cal. App. 3d at 605.

    C.    <u>Whether the Employment-Related Practices Exclusion Negated Any Potential for Coverage Under the Landmark Policy</u>

The duty to defend is a continuing one, arising on tender of defense and lasting until the underlying lawsuit is concluded, or until it has been shown that there is no potential for coverage. *Montrose Chemical Corp. v. Superior Court*, 6 Cal. 4th 287, 295, 24 Cal. Rptr. 2d 467 (1993). Defendant contends that there was no potential for coverage under the Landmark

---

[3] As the comments made in this case do not fall within California Civil Code section 46, they do not constitute slander per se. Thus, these comments are only actionable upon proof of special damages. *Douglas,* 43 Cal. App. 3d at 938-99 & n.8.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-7703 PSG (Ssx) | Date | March 17, 2009 |
|---|---|---|---|
| Title | Diversified Communications Services, Inc. v. Landmark American Insurance Company | | |

Policy because the Employment-Related Practices Exclusion unmistakably applied. The Court agrees.

The Employment-Related Practices Exclusion provides as follows:

B. The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage B – Personal and Advertising Injury Liability:

This insurance does not apply to:

"Personal and advertising injury" to:

(1) A person arising out of any:

...

(c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person

*Doll Decl., Ex.* 1. In determining whether the Employment-Related Practices Exclusion applies in this case, the Court is mindful that "whereas coverage clauses are interpreted broadly so as to afford the greatest possible protection to the insured [citations], exclusionary clauses are interpreted narrowly against the insurer." *State Farm Mut. Auto. Ins. Co. v. Partridge*, 10 Cal. 3d 94, 101-02, 109 Cal. Rptr. 811 (1973). Additionally, the Court, consistent with applicable precedent, finds that "[to] fall within the scope of the employment-related practices exclusion, a defamatory statement must, at a minimum, be made 'in the context of' the person's employment." *Golden Eagle Ins. Corp. v. Rocky Cola Cafe*, 94 Cal. App. 4th 120, 127, 114 Cal. Rptr. 2d 16 (2001) (citing *Loyola Marymount Univ. v. Hartford Accident & Indem. Co.*, 219 Cal. App. 3d 1217, 1222-23, 271 Cal. Rptr. 528 (1990)); *see also Frank and Freedus v. Allstate Ins. Co.*, 45 Cal. App. 4th 461, 471-72, 52 Cal. Rptr. 2d 678 (1996) (looking to see whether "[t]he statement was made in the context of the [underlying plaintiff's] employment and [whether] its content is directed to [the underlying plaintiff's] performance during employment").

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-7703 PSG (Ssx) | Date | March 17, 2009 |
|---|---|---|---|
| Title | Diversified Communications Services, Inc. v. Landmark American Insurance Company | | |

Plaintiff argues that the defamation did not occur within the "context of" Wilson's employment. But the Court disagrees. As an initial matter, it is beyond dispute that the incidents occurred on site. Indeed, there is nothing in the *Wilson* Complaint that indicates otherwise. Granted, simply because a defamatory statement is made within a work setting "does not necessarily mean it is an employment-related act within the meaning of the exclusion." *Golden Eagle Ins. Corp.*, 94 Cal. App. 4th at 127. However, when a statement is made with the purpose of undermining employee morale, it is arguably employment-related. *See HS Servs., Inc. v. Nationwide Mutual Ins. Co.*, 109 F.3d 642, 646 (9th Cir. 1997); *Golden Eagle Ins. Corp.*, 94 Cal. App. 4th at 128 n.8.[4]

As the Court noted above, by calling a person "nigger," the person making the statement (at the very least) intimates that they regard the other as contemptible, inferior, and ignorant. Racial epithets thus "invade[] the victim's interest in emotional tranquility." *Delgado*, *supra*, at 100. As anybody who has been called a racial epithet in the workplace can attest, when such action occurs it has the consequence of effecting morale, which in turn affects performance. Levied with enough frequency and force, racial epithets can even have the consequence of leading to constructive termination, which is exactly what was claimed in the *Wilson* Complaint.

The statements made by Plaintiff's employees, allegedly on Plaintiff's behalf, did not directly speak to Wilson's performance as an employee. But as the Court has observed throughout this Order, one cannot divorce a word's meaning from its historical and cultural context. At the very least, in calling Wilson a "nigger," Plaintiff's employees intended to create a hostile, uncomfortable workplace environment. At most, in calling Wilson a "nigger," Plaintiff's employees indicated their belief that he was not capable of performing the job competently. The point being made here is that no matter how one slices it, the underlying incidents were "employment-related practices, policies, acts or omissions" excluded under this provision.

---

[4] In *HS Servs.*, the Ninth Circuit analyzed *Frank and Freedus*, 45 Cal. App. 4th 461. Upon review, the Court concluded that because the employer made a remark to "bolster employee morale," the remark was "employment related." *HS Servs.*, 109 F.3d at 646. The Ninth Circuit's reasoning applies to the inverse situation: undermining employee morale. Just as bolstering employee morale can have the effect of increasing employee productivity, undermining employee morale can have the effect of decreasing employee productivity. In any event, because, at the end of the day, the remarks effect employee productivity, the remarks can properly be deemed employment-related. This is at least true when the remarks are purposely made to either bolster or undermine employee morale.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-7703 PSG (Ssx) | Date | March 17, 2009 |
|---|---|---|---|
| Title | Diversified Communications Services, Inc. v. Landmark American Insurance Company | | |

If there was any doubt as to whether these incidents were employment-related, one need only take a cursory glance at the *Wilson* Complaint. The *Wilson* Complaint alleges two causes of action under California's Fair Employment and Housing Act. Specifically, Wilson brought Unlawful Employment Practices claims under sections 12940(a), (j), and (n) of the California Government Code. These claims alleged a course of conduct involving harassment and discrimination that took place, not outside, but within the confines of the employment setting. Plaintiff attempts to escape this fact but the fact is inescapable: this course of conduct was undoubtedly employment-related acts or omissions, such as defamation, harassment, humiliation or discrimination directed at Wilson and, therefore, falls within the exclusion at issue.

As no potential for coverage existed in this case, no duty to defend ever arose. Therefore, Defendant's Motion is GRANTED. As all five causes of action are premised on the existence of a duty to defend, the absence of such a duty disposes of this case. It is therefore DISMISSED.

IV.     CONCLUSION

Based on the foregoing, the Court GRANTS Defendant's Motion and DISMISSES the case.

**IT IS SO ORDERED.**